UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-62480-CIV-MARRA/HOPKINS

JUSTINE F. FEINMAN and IRA FEINMAN,

Plaintiff,

vs.

TARGET CORPORATION,

Defendant.
_____/

**OPINION AND ORDER**

This cause is before the Court upon Defendant Target Corporation's ("Target") Motion for Final Summary Judgment (DE 28). The motion is fully briefed and ripe for review. The Court has carefully considered the motion and is otherwise fully advised in the premises.

I.  Background

The facts, as culled from affidavits, exhibits, depositions, answers, answers to interrogatories and reasonably inferred therefrom in a light most favorable to the non-moving party, for the purpose of this motion, are as follows:

On December 18, 2010, Plaintiff Justine Feinman went to the Target store in Fort Lauderdale, Florida to purchase a cover for her new iPad with her husband, Plaintiff Ira Feinman. (Compl. ¶ ¶ 3-4, DE 1-2;  J. Feinman Dep. 38, 134, DE 28-1.)  As Mrs. Feinman was walking inside the store, she "felt something under her shoe" "some kind of suction or something," and slipped. (Id. at 149.)    She does not know what she slipped on and whether it was a liquid or plastic but she felt "some kind of substance."  (Id. at 155, 167.)   Mrs. Feinman  never saw anything on the floor either before or after she slipped, but she felt like something was under her

shoe. (Id. at 154, 156-57, 167.)  She does not know what caused her to slip. (Id. at 160.)  Mrs. Feinman testified as follows:

> Q: As you were proceeding towards the - -
>
> A: I didn't look.
>
> Q: Target employee, were you looking at the floor?
>
> A: No. I was really looking at the employee. I probably looked a little at the floor, but I was looking at the employee most of the time.
>
> Q:  Okay. And at no time did you see anything on the floor prior to your fall, true?
>
> A: No. I didn't see anything because I wasn't examining the floor, really. I mean, it's not like – because where my focus was more on, you know, getting to the – to the gentleman that's supposed to open it for me.

(Id. at 153.)

> Q: Did you ever see anything on the floor after you fell?
>
> A: No. I - - I didn't look because I was really sickened and in agony at that time. I was hanging over and calling my husband. I didn't see anything. I didn't look.

(Id. at 157.)

> Q: Do you know what caused you to slip?
>
> A: I don't know. I wish I knew.
>
> Q: So, as you sit here today, you don't know?
>
> A: I really don't know. I felt something is all I know.
>
> Q: But when you say, "I felt something," that means - -
>
> A: Under my shoe.
>
> Q: - - you're - - well, your shoe just slid, though?
>
> A: But I felt something there. I don't know if it was wet. I don't know if it was a piece of

plastic. I don't know what it was, but it was something because I knew I was going and I said, oh, my God, what's happening, and, boom, there I went. I don't know how to explain it any other way.

Q: Well, I am just trying to get a better idea - -

A: I know.

Q: - - potentially what it was. When you say "I felt something," you just assumed that because your foot was sliding on the floor?

A: No, but I felt something there. I felt - - I felt something under my shoe, like I know before I was sliding and then I was sliding. And I had explained, I felt myself going at the same time that I felt this thing under my shoe. I don't know what it was. I - - I really don't know what it was. I can't say.

(Id. at 160-61.)

Mr. Feinman testified as follows:

Q: Did your wife ever tell you what caused her to fall at the Target store back in December of 2010.

A: She said she slipped, she fell.

Q: Right. But did she ever tell you what caused her to fall?

A: She said she - - she said she felt something under her shoe and she fell.

Q: Felt something under her shoe. Did she say anything else - -

A: I don't know what - -

Q: - - besides that?

A: No.

Q: Did she tell you anything else in terms of what may have caused her to fall besides she felt something underneath her shoe?

A: No.

3

> Q: You came up to the scene after the fall, correct?
>
> A: Yes.
>
> Q: Did you look in the area where she fell?
>
> A: No. I went straight to my wife. I didn't look anywhere else.
>
> Q: So, at no time did you see anything on the floor where she fell - -
>
> A: I didn't look --
>
> Q: - - or in the area where she was?
>
> A: I didn't look at anything except for my wife.

(I. Feinman Dep. 58-59.)

Mrs. Feinman described the floor as "shiny" and "polished." (J. Feinman Dep. 152-53.) Mr. Feinman also believed there were "scattered showers" that day and it was "wet outside." (Id. at 66-67.)

Target executive team leader Sandra O'Laughlin responded to the incident scene and testified, "I'd gone over there and the floor was clean, . . . there wasn't anything on the floor." (O'Laughlin Dep. 5, 39, DE 28-3.) She performed this examination after speaking to several witnesses. (Id. at 42.) Ms. O'Laughlin also testified that "[t]he floors are inspected daily. . . people are passing by all the time. There's people in charge. They're also trained to look for anything that could be a potential slip." (O'Laughlin Dep. 40.) She did not, however, know the last time the area where Mrs. Feinman fell was inspected. (Id. at 52.)

Another Target employee, Valerie Mullings-Taylor, responded to the scene of the incident and inspected the floor, and explained that "we walk the entire sales floor on an hourly basis. . . So, if there's any liquid or mess on the floor, it's something that would be taken care of right away.

(Mullings-Taylor Dep. 20, DE 28-4.) She did not know when the aisle where Mrs. Feinman slipped was inspected and there is no checklist indicating when it was last inspected, but because it is a main aisle, there is "traffic there constantly." (Id. at 19-20.) Ms. Mullings-Taylor was working at the front of the store and went back to the electronics area when she heard about the slip and fall and asked Mrs. Feinman what she could do for her. (Id. at 13-14.) She also spoke with another Target employee about the incident and then went to check the floor herself to make sure there was no liquid that needed to be cleaned. (Id. at 15.)

Additionally, Target team member, Byron Balfour, was stationed at the relevant time in the electronics department. (Balfour Aff. ¶ 5, DE 28-5.) Mr. Balfour constantly monitored the electronics department and the surrounding area where the subject incident occurred for hazards throughout his shift. (Id. at ¶ 6.) He did not see any hazardous conditions present in area or on the floor when Mrs. Feinman fell. (Id. at ¶ 8.) Nor did he see Mrs. Feinman fall. Another customer informed him that someone behind him had fallen. (Id. at ¶ 9.) Immediately after the fall, he looked over at the area where Mrs. Feinman fell and he did not see anything on the floor. (Id. at 10.)

Target moves for summary judgment on the basis that it did not have constructive or actual notice of a dangerous condition on its floor and did not have an opportunity to take action to remedy the dangerous situation. In response, the Feinmans claim that there are multiple questions of material fact as to whether there was a foreign substance on the floor, the last time the floor was inspected, the length of time the substance was permitted to exist on the floor and the length of time between the incident and the employee inspections. Additionally, they contend there are contradictions in the Balfour affidavit and that Target's practice of not documenting the floor inspections raises a genuine issue of material fact.

## II.  Summary Judgment Standard

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp., 477 U.S. at 323.  To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case.  Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B).

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim.  Anderson, 477 U.S.

6

at 257.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).  If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. 242, 249-50.

III. Discussion[1]

To sustain a cause of action for negligence, the burden of proof is on the plaintiff to establish that: (1) the defendant owed a duty of reasonable care to maintain the premises in a reasonably safe condition; (2) the defendant breached that duty and (3) the defendant's breach was the proximate cause of the plaintiff's injuries and resulting damages.  Lake Parker Mall, Inc. v. Carson, 327 So. 2d 121, 123 (Fla. Dist. Ct. App. 1976). "[N]egligence [, however, ] may not be inferred from the mere happening of an accident alone."  Belden v. Lynch, 126 So. 2d 578, 581 (Fla. Dist. Ct. App.1961); see East Bay Raceway v. Parham, 497 So.2d 719, 720 (Fla. Dist. Ct. App.1986).  The mere fact that one slips and falls on a floor does not constitute evidence of negligence.  In Bucholtz v. City of Jacksonville, 72 So.2d 52, 53 (Fla.1954), the Florida Supreme Court rejected the claim of a woman who slipped and fell on steps where it was alleged the treads of the steps were permitted to be "worn slick and smooth."  The court noted that the owner of property which contains areas that become smooth are not obligated to "destroy the smoothness" of such areas.  Id.  The court further described the case as "a good illustration of the thought that

---

[1] In a diversity case, the Court applies Florida substantive law. See Pendergast v. Sprint Nextel Corp., 592 F.3d 1119, 1132–33 (11th Cir. 2010); Royal Ins. Co. of America v. Whitaker Contracting Corp., 242 F.3d 1035, 1040 (11th Cir. 2001).

every time someone is injured, someone else should pay for the injury." Id.  Where the facts of a case are undisputed and the evidence ultimately leads to but one conclusion, the question of negligence becomes one of law for the trial court. Stirling v. Sapp, 229 So.2d 850, 853 (Fla.1969).

In the instant case, the undisputed facts are that Mrs. Feinman fell in a Target store. Neither she nor her husband, who is a co-plaintiff, have any idea what caused her to fall, except that she felt "something" under her shoe. Beyond this fact there is no evidence either as to the condition of the floor or the cause of fall. Several Target employees, who arrived at the scene shortly after the fall, saw nothing that could account for the fall.  In order to arrive at a conclusion that Target was responsible for the ultimate injury, Plaintiffs would have to prove there was negligence on the part of Target in the maintenance of its floor. Based on the record in this case, Target has met its burden by providing record evidence which demonstrates the absence of negligence on its part.  By making this initial showing, the burden shifts to Plaintiffs to point to other portions of the record that would show that there was indeed a genuine issue of fact regarding Target's negligence.

Controlling in this case is Florida Statutes § 768.0755.[2]  This statute provides that a

---

[2]   Florida Statute § 768.0755 provides:

> (1) If a person slips and falls on a transitory foreign substance in a business establishment, the injured person must prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it. Constructive knowledge may be proven by circumstantial evidence showing that:
>
> (a) The dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition; or

person who slips and falls on a transitory foreign substance in a business establishment "must prove that the business establishment has actual or constructive knowledge of the dangerous condition and should have taken action to remedy it." Fla. Stat. § 768.0755(1).

Two Florida cases with facts nearly identical to the facts here demonstrate that Plaintiffs have failed to create a genuine issue of material fact for trial. In Evens v. Eastern Air Lines, Inc., an airline passenger alleged negligence following a "slip and fall." Evens v. Eastern Air Lines, Inc., 468 So. 2d 1111 (Fla. Dist. Ct. App. 1985). In Evens, the passenger testified that she saw nothing on the floor prior to her fall and did not look at the floor after her fall. Id. She stated only that she felt "something wet" while on the floor. Id. In moving for summary judgment, the defendant stated that the plaintiff failed to demonstrate that it had actual or constructive knowledge of the alleged foreign substance and submitted evidence demonstrating that the plane was inspected prior to boarding and no one observed any debris. Id. at 1112. In affirming the granting of summary judgment, the court found no evidence creating a genuine issue of material fact as to both actual and constructive notice to the defendant of a dangerous condition. There was no actual notice "since no spot was observed" and no constructive notice since "no facts whatever exist indicating the length of time the unidentified spot was present." Id.

Likewise, in Publix Super Markets, Inc. v. Schmidt, 509 So. 2d 977 (Fla. Dist. Ct. App. 1987), the plaintiff, who slipped and fell while shopping, testified that she thought she slipped on

---

      (b) The condition occurred with regularity and was therefore foreseeable.

      (2) This section does not affect any common-law duty of care owed by a person or entity in possession or control of a business premises.

Fla. Stat. § 768.0755.

9

"grease" because of the way she fell, but both she and her husband saw nothing on the floor. The court ruled that the plaintiff failed to show how the condition, if any, was created, who caused it or how long it existed. Id. at 978.  Consequently, the court found that the trial court erred in failing to grant judgment as a matter of law in favor of the defendant.

Here, even though Plaintiff testified she "felt something under her shoe" "some kind of substance", neither she or her husband saw anything on the floor, and they have presented no evidence to suggest Defendant was on notice of a dangerous condition or was negligent in failing to maintain the premises in a safe condition. This case is no different from Evens and Schmidt, where the only evidence supporting the claims was testimony from one plaintiff that she "felt something wet" and the other that she thought she slipped on "grease. " As is the case here, neither saw anything and neither could show the defendant was on actual or constructive notice of a dangerous condition.  Similarly in this case, Plaintiffs have failed to raise a genuine issue of material fact that Target possessed either actual or constructive notice as to the presence of any substance or item on the floor that caused Mrs. Feinman to fall or that Target failed to exercise reasonable care in maintaining the premises. Target has introduced evidence establishing that, immediately following Mrs. Feinman's fall, an inspection was made by several Target employees, who examined the area for the presence of any transitory foreign substance or debris. All inspections were negative. For their part, Plaintiffs have no idea what caused Mrs. Feinman to fall and there is no record evidence of any other person, employee, or customer who made such an observation. It appears that Plaintiffs' case is grounded in no more than a guess or speculation and not founded on observable facts or reasonable inferences drawn from the record. Indeed, Plaintiffs' description of the accident contains no allegation of any positive act or

omission on the part of Target.

The Court is mindful to draw inferences from the evidence in the light most favorable to Plaintiffs and resolve all reasonable doubts in their favor. However, only one inference reasonably can be drawn from the evidence in this case, and that is that Mrs. Feinman's fall was not due to Target's failure to maintain its floor in a reasonably safe condition. This inference leads to the unavoidable conclusion that Plaintiffs cannot prove their claim of negligence as a matter of law.

Nonetheless, Plaintiffs claim that there are genuine issues of material facts that require a trial. The Court rejects Plaintiffs' argument that a genuine issue of material fact exists as to whether there was a foreign substance on the floor. As discussed previously, the fact that both Plaintiffs testified that they did not see anything on the floor after Mrs. Feinman fell, combined with the testimony of the Target witnesses who testified similarly, renders Mrs. Feinman's speculation that she "felt something under her shoe" insufficient to create a genuine issue of fact for trial. Even assuming there was "something" present, there has been no showing what it was, how the condition, if any, was created, who created it and how long it existed. Schmidt, 509 So.2d at 978. The lack of evidence on these points renders the remaining questions raised by Plaintiffs (i.e., the history and documentation of floor inspections, the alleged contradictions in the Balfour affidavit[3] and Mr. Feinman's testimony that there were scattered showers[4])

---

[3] The Court has reviewed the Balfour affidavit and finds no contradictions.

[4] To the extent Plaintiffs are claiming that rain showers that day caused the slippery condition, there is no record evidence to support this contention. Furthermore, the Court concludes that such a conclusion could only be reached by impermissibly piling inferences upon inferences. "[A]n inference is not reasonable if it is only a guess or a possibility for such an inference is not based on the evidence but is pure conjecture and speculation." Daniels v. Twin

immaterial.

In sum, "the right to recover in a slip and fall case requires more than a showing simply that the surface upon which the injured fell was slick, smooth or wet." Williams v. Holland, 205 So.2d 682, 683 (Fla. Dist. Ct. App.1968). Before there can be recovery for a slip and fall injury, the allegations must show some negligence on the part of the defendant. Bucholtz, 72 So. 2d at 53; Commercial Credit Corporation v. Varn, 108 So. 2d 638, 639-40 (Fla. Dist. Ct. App.1959). Target met its initial burden of establishing that there was no actual or constructive knowledge of a substance on the floor, that there was no substance on the floor that was the proximate cause of Mrs. Feinman's injuries and that Target did not fail to use reasonable care. Williams, 866 So.2d at 123. Having met its burden, the burden then shifted to Plaintiffs to show by reference to the record that there is indeed a genuine issue of fact regarding Target's alleged negligence. Plaintiffs have not met this burden. Put another way, there is not even a scintilla of evidence to create a material issue of fact for jury determination.

IV.  Conclusion

Accordingly, it is therefore **ORDERED AND ADJUDGED** as follows:

1)    Target's Motion for Final Summary Judgment (DE 28) is **GRANTED.**

2)    The Court will separately issue judgment for Target.

---

Oaks Nursing Home, 692 F.2d 1321, 1322 (11th Cir.1982) (internal quotation marks omitted). Indeed, "speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." Chambers v. Walt Disney World Co., 132 F. Supp. 2d 1356, 1363 (M.D. Fla.2001) (quoting Tyler v. Runyon, 70 F.3d 458, 469 (7th Cir.1995)).

3) The Clerk shall close this case and all pending motions are denied as moot.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 6th day of December, 2012.

_____
KENNETH A. MARRA
United States District Judge